**Eric Baum** (seeking admission *pro hac vice*)
EBAUM@EANDBLAW.COM
**Adriana Alcalde** (seeking admission *pro hac vice*)
AALCALDE@EANDBLAW.COM
EISENBERG & BAUM, LLP
24 Union Square East, PENTHOUSE
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708

**ANAHITA SEDAGHATFAR, ESQ. (SBN 217289)**
Email: asedaghatfar@cochranfirm.com
**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
Tel: (323) 435-8205
Fax: (323) 282-5280

*Attorneys for Plaintiff Erica Lathrop*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERICA LATHROP,<br><br>*Plaintiff,*<br><br>v.<br><br>WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.; WATCHTOWER ENTERPRISES; WATCHTOWER FOUNDATION, INC.; WATCHTOWER ASSOCIATES, LTD; KINGDOM SUPPORT SERVICES, INC.; RELIGIOUS ORDER OF JEHOVAH'S WITNESSES; CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES; THE GOVERNING BODY OF JEHOVAH'S WITNESSES; OTHELLO NORTH SPANISH CONGREGATION OF JEHOVAH'S WITNESSES; LAS PALMAS CONGREGATION OF JEHOVAH'S WITNESSES; MANUEL BELIZ; and REFUGIO VALENZUELA,<br><br>*Defendants.* | **Case No.:** 5:21-cv-01547<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. Childhood Sexual Assault**<br><br>**2. Common-Law Negligence**<br><br>**3. Negligent Appointment, Retention, and Supervision;**<br><br>**4. Gross Negligence/Willful Misconduct**<br><br>**5. Negligence Per Se and Common-Law Negligence - Failure to Report Suspected Child Abuse**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Erica Lathrop states her Complaint against the "Church Defendants"—Defendants Watchtower Bible and Tracy Society, Inc.; Watchtower Enterprises; Watchtower Foundation, Inc.; Watchtower Associates, Ltd; Kingdom Support Services, Inc.; Religious Order of Jehovah's Witnesses; Christian Congregation of Jehovah's Witnesses; the Governing Body of Jehovah's Witnesses; Othello North Spanish Congregation of Jehovah's Witnesses; and Las Palmas Congregation of Jehovah's Witnesses—and her abusers, Defendants Manuel Beliz and Refugio Valenzuela, based upon personal knowledge and information and belief:

## INTRODUCTION

1. From the age of four to sixteen, Erica Lathrop was sexually assaulted by elders of the religious organization known as Jehovah's Witnesses: Manuel Beliz, who was then a ministerial servant and later an elder of the Othello North Spanish Congregation of Jehovah's Witnesses in Washington state, and Refugio Valenzeula, an elder of Las Palmas Congregation of Jehovah's Witnesses in California. Both defendants Beliz and Valenzuela touched Ms. Lathrop below and above the waist, over and under her clothes, with digital penetration of her vagina.

2. Defendants' sexual assaults and negligence occurred in both Washington state and California.

3. Ms. Lathrop originally filed her claims under Washington state law in the U.S. District Court for the Eastern District of Washington, invoking federal-question jurisdiction when diversity jurisdiction would be proper. ECF No. 19 at 1–, *Rodriguez v. Watchtower Bible and Tract Society of New York, Inc.*, Case No. 2:02-cv-00030-EFS (E.D. Wash. May 20, 2002).

4. The court entered judgment dismissing the complaint for lack of subjection matter jurisdiction, but the dismissal was "without prejudice to refiling of a complaint with proper jurisdiction." *Id.* at 4; ECF No. 20 at 1, *Rodriguez v. Watchtower Bible and Tract Society of New York, Inc.*, Case No. 2:02-cv-00030-EFS (E.D. Wash. May 20, 2002).

5. Ms. Lathrop then refiled her claims under Washington state law; Watchtower Bible and Tract Society, Inc. and the Othello Spanish Congregation of Jehovah's Witnesses (together, the "Church") moved for summary judgment, and ultimately, the court "granted the Church's motion" because "the suit was beyond the statute of limitations" without "reach[ing] or express[ing] any opinion on the other defenses of the Church." ECF No. 66 at 10, *Rodriguez v. Watchtower Bible and Tract Society of New York, Inc.*, Case No. 2:02-cv-00190-EFS (E.D. Wash. Oct. 3, 2003). Accordingly, the court never reached the merits, and the Church relied on Washington state law. *Id.* at 7–8.

6. Ms. Lathrop's claims under California state law "ha[ve] not been litigated to finality" or "would otherwise be barred as of January 1, 2020." Cal. Code Civ. Proc. § 340.1(q). Nor has any federal court reached a conclusion on the merits of her claims. Thus, her claims are timely because there is no "claim for damages" under California law "that has not been litigated to finality and that would otherwise be barred as of January 1, 2020," and so her "claims may be commenced within three years of January 1, 2020." *See* Cal. Code Civ. Proc. § 340.1(q) (emphasis added).

**THE PARTIES**

7. Plaintiff Erica Lathrop is a resident of Chino Hills, California. She and her parents were part of the Jehovah's Witnesses organization

8. Defendant Watchtower Bible and Tract Society, In. is located at 25 Columbia Heights, Brooklyn, New York 11201. Upon information and belief, the Watchtower supervised and exercised control over Ms. Lathrop's abusers—Defendants Beliz and Valenzuela. DefendantWatchtower also finalized appointments of elders, supervised them, and formulated organizational policies giving rise to its liability.

9. Upon information and belief, DefendantWatchtower regulates all aspects of participation in Jehovah's Witness events, and members submit to the organization's control in all aspects of their lives. Personal grooming, appearance,

and dress are regulated. Use of alcohol, tobacco or drugs as well as illegal sexual conduct, such as childhood sexual abuse, and legal sexual conduct are subject to regulation by the congregation. The organization also implements the practice of shunning, which involves isolating and not interacting with members that have left the church or not followed the rules of the elders.

10. Upon information and belief, Defendant Watchtower encourages to bring problems to elders to be resolved rather than to seek intervention from outside organizations. When a congregant commits an act of wrongdoing, such as sexual abuse of a child, or engagement of sex with a minor, that matter must be brought to an elder to be resolved. If there are not two witnesses to the event, and the accused has not confessed, the accused is determined to be innocent and treated as such, and no corrective action is taken by the congregation. There is no requirement by the congregation for the abuse to be reported to authorities and investigated properly and no punitive actions are taken. Furthermore, illegal sex acts such as the sexual abuse of children often take place in private without witnesses. As such, this policy functions to protect child sex abusers.

11. Defendant Watchtower Enterprises is a corporation organized and existing under the laws of the State of New York.

12. Defendant Watchtower Foundation, Inc. is a corporation organized and existing under the laws of the State of New York.

13. Defendant Watchtower Associates, Ltd. is a corporation organized and existing under the laws of the State of New York.

14. Defendant Kingdom Support Services, Inc. is a corporation organized andexisting under the laws of the State of New York.

15. Defendant Religious Order of Jehovah's Witness SES is a corporation organized and existing under the laws of the State of New York.

16. Upon information and belief, at all times since April 2001, Defendant Christian Congregation of Jehovah's Witnesses ("CCJW") was and is a not-for-profit

religious corporation organized and existing under and by virtue of the laws of the State of New York. Effective April 2001, CCJW assumed from the Watchtower the obligation to operate the Service Department of the United States Branch of Jehovah's Witnesses and became the Watchtower's successor in interest.

17.     Upon information and belief, Defendant The Governing Body of Jehovah's Witnesses is and was a business entity of unknown legal status conducting business in the State of New York.  At the time of the sexual abuse alleged here, the Governing Body's principal headquarters was located in Brooklyn, New York, which is in Kings County.  At the time of the filing of this Verified Complaint, the Governing Body's principal headquarters is located in Warwick, New York, which is located in Orange County. During the dates of the sexual abuse of Ms. Lathrop, the Governing Body established the sexual-abuse policies implemented by the Watchtower and all congregations of Jehovah's Witnesses in the United States. They established the policies for appointing and supervising elders and ministerial servants within the Jehovah's Witness organization, participated in the appointment of elders and ministerial servants, and exercised supervision and control over Defendants Beliz and Valenzuela.

18.     Upon information and belief, the structure of the Jehovah's Witnesses organization is hierarchical. At all times relevant here, the head of the Jehovah's Witnesses organization was Defendant Governing Body, which is comprised of a fluctuating number of elders and has authority over all congregations.

19.     Upon information and belief, Defendant Watchtower published a series of handbooks that were distributed to elders and kept secret from other Jehovah's Witnesses and the public. These handbooks provided instruction to elders regarding day-to-day administration of the organization. It is also believed that it contained instructions regarding how to respond to allegations of wrongdoing, including child molestation, when to convene a judicial committee, and how to handle the procedure. DefendantWatchtower reviews recommendations of prospective elders and directly

appoints overseers. Defendant Overseers are responsible for ensuring that the directives and policies from DefendantWatchtower and DefendantGoverning Body are being followed and implemented. It is DefendantGoverning Body that has final approval of these recommendations.

20. The policies on child molestation promulgated by DefendantWatchtower and DefendantGoverning Body through secret elder handbooks and confidential letters were not divulged to the members. Through this required secrecy in cases of child molestation and sex, Defendant Watchtower and Defendant Governing Body intentionally concealed the threat of child molestation from its members. Consequently, Defendant Watchtower and Defendant Governing Body shielded child molesters from criminal prosecutions and increased the risk of molestation of minors.

21. Defendant Othello North Spanish Congregation of Jehovah's Witnesses, located in Othello, Washington, is an unincorporated association and part of the Jehovah's Witnesses organization.

22. Defendant Las Palmas Congregation of Jehovah's Witnesses, located in California, is an unincorporated association and part of the Jehovah's Witnesses organization.

23. Ms. Lathrop reported that she had been sexually abused by Defendant Beliz to elders Carlos Chicas and Milton Melendez of Defendant Las Palmas Congregation of Jehovah's Witnesses.  Defendant Manuel Beliz was associated with Defendant Othello North Spanish Congregation of Jehovah's Witnesses and was or is a resident of Washington state during this association.  Defendant Beliz was assigned and otherwise authorized to serve in his position by the joint efforts of DefendantWatchtower and Defendant Governing Body. Upon information and belief, Defendant Beliz knew that it was the policy and the practice of DefendantWatchtower and Defendant Governing Body to cover up the instances of childhood sexual abuse by its agents and to affirmatively shield its agents from

criminal prosecution and relied upon this policy and practice in engaging in sexually abusive conduct. Defendant Beliz had regular and frequent contact with children who attended the congregations, a circumstance of which Defendant Watchtower and Defendant Governing Body had notice.

24. Upon information and belief, Defendant Watchtower and Defendant Governing Body knew or should have known that Defendant Beliz committed acts of sexual abuse against Ms. Lathrop before she and her family reported it in 1996.

25. Defendant Refugio Valenzuela was or is associated with Defendant Las Palmas Congregation of Jehovah's Witnesses and was or is a resident of California during this association. Defendant Valenzuela was assigned and otherwise authorized to serve in his position by the joint efforts of Defendant Watchtower and Defendant Governing Body. Upon information and belief, Defendant Valenzuela knew that it was the policy and the practice of Defendant Watchtower and Defendant Governing Body to cover up the instances of childhood sexual abuse by its agents and to affirmatively shield its agents from criminal prosecution and relied upon this policy and practice in engaging in sexually abusive conduct. Defendant Valenzuela had regular and frequent contact with children who attended the congregations, a circumstance of which Defendant Watchtower and Defendant Governing Body had notice.

26. Upon information and belief, DefendantWatchtower and DefendantGoverning Body knew or should have known that Valenzuela committed acts of sexual abuse against Ms. Lathrop.

**JURISDICTION AND VENUE**

27. This Court has diversity jurisdiction because the case is between "citizens of different States" and the amount in controversy exceeds "$75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a)(1).

28. Venue lies in this District becausea substantial part of the events giving rise to Plaintiff's claims occurred in the Central District of California. 28 U.S.C.

§ 1391(b)(2).

**FACTUAL ALLEGATIONS**

29. Erica Lathrop was involved with the Jehovah's Witnesses organization for about twenty years. She was a "publisher" and pioneered around 1995.

30. Ms. Lathrop and her family attended services at various Kingdom Halls throughout her life. Between 1978 and 1989, she attended Defendant Othello North Spanish Congregation of Jehovah's Witnesses located at 710 East Scootney Street, Othello, Washington 99344. Between 1989 and 1992, she attended a Kingdom Hall in West Sacramento, California, which have become townhouses beginning at 631 Welland Way, West Sacramento, California 95605. From 1993 until 1999, she attended the Dos Rios Kingdom Hall at 2331 Northview Drive, Sacramento, California 95843, which is now called the Natomas Congregation.

31. From the age of four to eleven, Ms. Lathrop was sexually assaulted by Defendant Beliz in Washington state. Defendant Beliz touched her below and above the waist, over and under her clothes, with digital penetration of her vagina. This abuse occurred on a weekly basis until Ms. Lathrop's family moved to Sacramento, California when she was eleven years old

32. During the seven-year onslaught of abuse, Defendant Beliz would warn Ms. Lathrop that she would be shunned from the organization of Defendant Jehovah's Witnesses if she reported the abuse.

33. From the age of eleven to sixteen, Ms. Lathrop was sexually assaulted by Defendant Valenzeula in California. Defendant Valenzuela touched her below and above the waist, over and under her clothes, with digital penetration of her vagina.

34. The abuse and negligence occurred in two different states and congregations. The sexual abuse by Defendant Beliz and Defendant Valenzuela proximately caused Ms. Lathrop damages, and the Church Defendants were negligent because by their failure to protect her, their actions allowed childhood sexual assault by Defendants Beliz and Valenzuela.

**Sexual Abuse by Defendant Beliz (1983– 1996)**

35. In Washington state, her abuser was Defendant Beliz, and in 1996, Ms. Lathrop's parents reported the sexual abuse to John White, an elder in the Othello North Spanish Congregation of Jehovah's Witnesses.

36. Around the same time, Ms. Lathrop reported that she had been sexually abused by Defendant Beliz to elders Carlos Chicas and Milton Melendez of Defendant Las Palmas Congregation of Jehovah's Witnesses. These reports led to an investigation of Defendant Beliz by the Church Defendants. Chicas told Ms. Lathrop to not say anything and that the congregation would take care of the matter. She was also warned by Melendez that she would be shunned if she went to the police. Nevertheless, she eventually did so, and Defendant Beliz was investigated.

37. Although Defendant Beliz was disfellowshipped in October 1996—that is, during which time he would not have been one of Jehovah's Witnesses, he was inexplicably reinstated in June 1997.

38. In 1998, Defendant Beliz was convicted of sexual abuse of Ms. Lathrop after a jury trial. He began serving an eleven-year term imposed on August 24, 1998.

39. Upon information and belief, there were judicial hearings conducted regarding her abuse.

40. Upon information and belief, Adermira "Mimi" Smith was also abused by Defendant Beliz in Washington state.

41. John White made it clear that the Church Defendants knew Defendant Beliz had problems but thought he became a better man.

**Sexual Abuse by Defendant Valenzuela (1990 – 1996)**

42. In California, her abuser was Refugio Valenzuela, and three elders were involved in her case: Carlos Chicas, Jorge Macias, and Milton Melendez.

43. In or around 1996, Ms. Lathrop reported her abuse to elders. They shunned her and threatened to disfellowship her.

44. Ms. Lathrop's father, Ruben Garvaz, was an elder

andWatchtowerremoved him for refusing to tell her to keep quiet and not go to the police.

45. Ms. Lathrop was raised as Jehovah's Witness. She was trained by DefendantWatchtower and DefendantGoverning Body that she should obey, trust, and respect individuals appointed as elders.

46. Defendants Beliz and Valenzeula were both elders with substantial authority over Ms. Lathrop. They used their positions as elders to gain access to her and used that access to accomplish acts of childhood sexual assault.

47. DefendantWatchtower and DefendantGoverning Body failed to adequately supervise their agents, Defendants Beliz and Valenzeula, along with other individuals in positions of power, and created a safe haven for molesters, thereby condoning child sexual abuse. As a result of their failure and negligence, Ms. Lathrop was sexually abused and assaulted for twelve years, beginning when she was a toddler.

48. Despite DefendantJehovah's Witnesses organization and its elders alleging to be a safe haven for children, their Kingdom Halls arenot places where children of any religion (or non-religion) were protected from sexual abuse by predatory elders or members. Not only were children not safe from predators, but Church Defendants actively promoted and protected the predators within the congregation.

49. To reiterate, her claims under California law are timely because there is no "claim for damages . . . *that has not been litigated to finality* and that would otherwise be barred as of January 1, 2020," and so her "claims may be commenced within three years of January 1, 2020." *See* Cal. Code Civ. Proc. § 340.1(q) (emphasis added).

## CAUSES OF ACTION
### COUNT I: Childhood Sexual Assault

50. Ms. Lathrop re-alleges and incorporates every allegation in this

Complaint.

51. California's newly revised section 340.1 revives three types of "claim[s] for damages . . . that that has not been litigated to finality and that would otherwise be barred as of January 1, 2020": (1) "[a]n action against any person for committing an act of childhood sexual assault"; (2) "[a]n action for liability against any person or entity who owed a duty of care to the plaintiff, if a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff"; and (3) "[a]n action for liability against any person or entity if an intentional act by that person or entity was a legal cause of the childhood sexual assault that resulted in the injury to the plaintiff." Cal. Code Civ. Proc. §§ 340.1(a)(1)–(3) & (q).

52. Ms. Lathrop was less than eighteen years old at the time of her abuse.

53. Defendant Beliz and Defendant Valenzuela were adults in positions of power and authority working for DefendantWatchtower and DefendantGoverning Body.

54. They both engaged in a pattern of intentional childhood sexual assault, touching Ms. Lathrop below and above the waist, over and under her clothes, with digital penetration.

55. The Church Defendants had a special relationship to Ms. Lathrop, then a minor child, to protect her from harm.

56. The Church Defendants negligently breached their fiduciary duty to Ms. Lathrop by failing to take reasonable steps to prevent Defendant Beliz and Defendant Valenzuela from continuing to sexually assault Ms. Lathrop and by failing to warn or protect her.

57. By failing to report the suspected abuse of Ms. Lathrop, the Church Defendants permitted the childhood sexual assault of Ms. Lathrop to continue to occur.

58. DefendantWatchtower and DefendantGoverning Body allowed its

members and elders to prey on children. It created an environment that allowed and emboldened elders to feel empowered enough to use their positions of authority to sexually abuse a child.

59. As a direct result of this unlawful conduct, Ms. Lathrop has suffered severe emotional distress, humiliation, pain and suffering, and loss of enjoyment of life, among other things.

60. Ms. Lathrop uses medical marijuana to cope with the anxiety and depression stemming from her past childhood sexual abuse. She previously took Lexapro, Prozac, and Zoloft as a result of the emotional harm she suffered.

61. As a direct result of this unlawful conduct, Ms. Lathrop has suffered the destruction of her spiritual life as well as her trust in the community and society in general, creating pecuniary losses, such as lost earning capacity.

62. Ms. Lathrop is entitled to all remedies available for violations of the California state law.

## COUNT II: Common-Law Negligence

63. Ms. Lathrop re-alleges and incorporates every allegation in this Complaint.

64. The Church Defendants allowed its members and elders to prey on children. It created an environment that allowed and emboldened elders to feel empowered enough to use their positions of authority to abuse a child. They tried to cover up their actions by silencing Ms. Lathrop as a child when she reported the abuse.

65. The Church Defendants assumed a duty to protect Ms. Lathrop from sexual predators within the Church Defendants' organization. The Church Defendants further knew or should have known that Ms. Lathrop was at risk of foreseeable harm by their agents, Defendants Beliz and Defendants Valenzuela, but failed to act to protect her from said harm. The Church Defendants breached their duty to Ms. Lathrop, thereby causing great harm to her.

66. The Church Defendants knew or should have known of their agents' propensities to use their positions as leaders in the local and national congregations to engage in and/or aid and abet acts of sexual abuse. The Church Defendants failed to adequately investigate, evaluate, and otherwise research the background of their agents, prior to their hiring appointing him to leadership positions.

67. Defendants Beliz and Defendants Valenzuela were retained by the Church Defendants and acted on behalf of and under the supervision of the Church Defendants.

68. The Church Defendants failed to adequately investigate, evaluate, and otherwise monitor the abusers' conduct. They failed to notify the authorities of the illegal sexual conduct with a child.

69. By holding Defendants Beliz and Defendants Valenzuela as leaders in the community and by allowing them to undertake the religious, spiritual and emotional counseling of Ms. Lathrop, the Church Defendants placed themselves in a position of trust and confidence with her, and this imposed a duty to act in Ms. Lathrop's best interest.

70. Because of this special relationship, the Church Defendants gained the trust of Ms. Lathrop and her confidence that they would protect her from harm.

71. As a result of the Church Defendants' conduct, Ms. Lathrop has suffered and continues to suffer harm.

72. Ms. Lathrop is entitled to all remedies available for violations of the California state law.

**COUNT III: Negligent Appointment, Retention, and Supervision**

73. Ms. Lathrop re-alleges and incorporates every allegation in this Complaint.

74. The Church Defendants retained, appointed, promoted, and protected Manuel Beliz and Refugio Valenzuela.

75. The Church Defendants failed to protect Ms. Lathrop. They penalized

PLAINTIFF ERICA LATHROP'S COMPLAINT
-13-

her for coming forward furthering the culture of secrecy.

76. The Church Defendants failed to supervise their representatives and train them on proper behavior when dealing with children and reported child abuse.

77. As a result of the Church Defendants' conduct, Ms. Lathrop has suffered and continues to suffer harm.

78. Ms. Lathrop is entitled to all remedies available for violations of the California state law.

### COUNT IV: Gross Negligence/Willful Misconduct

79. Ms. Lathrop re-alleges and incorporates every allegation in this Complaint.

80. The conduct exhibited by the Church Defendants in failing to properly supervise, report and prevent serious abuses by its representatives is willful misconduct.

81. The Church Defendants were made aware of the conduct of its employees and proceeded to silence Ms. Lathrop, a child at the time.

82. The behavior of the Church Defendants demonstrates a conscious indifference to the safety and welfare of Ms. Lathrop.

83. The Church Defendants knew or should have known of the dangerous propensities of their agentsyet failed to act to protect the welfare of children in their care and custody, thereby allowing Ms. Lathrop to be sexually abused.

84. The sexual abuse could have been prevented but for the Church Defendants' willful misconduct and gross negligence in failing to implement safeguards to protect Ms. Lathrop in violation of the Church Defendants' duty to protect the children entrusted in their care.

85. As a result of the Church Defendants' conduct, Ms. Lathrop has suffered and continues to suffer harm.

86. Ms. Lathrop is entitled to all remedies available for violations of the California state law.

## COUNT V: Negligence Per Se and Common-Law Negligence – Failure to Report Suspected Child Abuse

87. Ms. Lathrop re-alleges and incorporates every allegation in this Complaint.

88. At all times relevant here, California had a mandatory reporting statute—Child Abuse and Neglect Reporting Act ("CANRA") pursuant to Penal Codes 11164 through 11174.3—requiring the report of suspected child abuse.

89. The Church Defendants failed to report to lawenforcement the abusive and illegal acts of their agents, Defendant Beliz and Defendant Valenzuela, both prior to and after the abuse inflicted on Ms. Lathrop. By failing to report the actions, they violated California mandatory reporting laws intended to safeguard the welfare of abused children. The violation of mandatory reporting requirements constitutes negligence per se.

90. The Church Defendants' failure to report also constitutes common-law negligence. The Church Defendants asserted their authority over Ms. Lathrop and their abusers, Defendant Beliz and Defendant Valenzuela, creating a special relationship of trust, confidence, and power of her. In the context of this special relationship and the unequal relationship among the parties, the Church Defendants assumed a duty to handle all reports of child abuse. By failing to do so, the ChurchDefendants acted with conscious disregard for the safety and welfare of Ms. Lathrop and violated their duty to her detriment.

91. As a result of the Church Defendants' conduct, Ms. Lathrop has suffered and continues to suffer harm.

92. Ms. Lathrop is entitled to all remedies available for violations of the California state law.

## JURY DEMAND

93. Plaintiff Erica Lathrop requests a jury trial.

## PRAYER FOR RELIEF

Plaintiff Erica Lathrop requests the following relief for the violations set forth in this Complaint:

    a.    Enter a declaratory judgment stating that Defendants' practices, policies, and procedures subjected Plaintiff to childhood sexual abuse in violation of the law.

    b.    Enjoin Defendants from implementing or enforcing any policy, procedure or practice that denies child victims of sexual abuse any of the protections afforded them under the law, including but not limited to mandatory reporting and disciplinary action of the abuser:

        i.    to develop, implement, promulgate, and comply with a policy providing for the training of each and every employee in the mandatory reporting requirements as it relates to actual or suspected child abuse;

        ii.    To develop, implement, promulgate, and comply with a policy providing for reporting and investigation of complaints regarding actual or suspected child abuse; and

        iii.    To develop, implement, promulgate, and comply with a policy providing for disciplinary measures to be imposed upon any person found responsible for child abuse and any individual who failed to act reasonably once alerted to actual or suspected child abuse.

    c.    Award Plaintiff:

        i.    Compensatory damages in excess of $75,000 for past, present, and future medical costs and healthcare-related expenses;

        ii.    Compensatory damages in excess of $75,000 for past, present, and future emotional distress;

        iii.    Compensatory damages in excess of $75,000 for past, present, and future loss of enjoyment of life;

     iv.    Compensatory damages in excess of $75,000 for pecuniary losses, including lost earning capacity;

     v.    Punitive and/or exemplary damages;

     vi.    Litigation costs and expenses, including reasonable attorney's fees;

     vii.    Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

     viii.    Any other relief that the Court deems just and proper.

These amounts should be determined at trial by a jury.

Dated: September 3, 2021                   Respectfully submitted,

/s/ Eric Baum
Eric Baum (seeking admission *pro hac vice*)
Adriana Alcalde (seeking admission *pro hac vice*)
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, NY 10003
Tel: (212) 353-8700
Fax: (212) 353-1708
*Attorneys for Plaintiff Erica Lathrop*

Dated: September 3, 2021                   Respectfully submitted,

/ s / - Anahita Sedaghatfar, Esq.

By: _____
ANAHITA SEDAGHATFAR
Attorneys for Plaintiff ERICA LATHROP